UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BASF CORP.,

    Plaintiff,

v.                                          Case No: 8:23-cv-00868-KKM-JSS

USA COACH, LLC,

    Defendant.
_____

## ORDER

Defendant USA Coach, LLC, moves to dismiss Plaintiff BASF Corp.'s complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Am. MTD. (Doc. 13). Alternatively, USA Coach moves to strike BASF's request that the Court award "[attorney's] fees of this action as permitted by law." *See* Compl. (Doc. 1) at 10; Am. MTD at 13–14. The Court denies the motion to dismiss because BASF has alleged facts plausibly supporting its claims for breach of contract, unjust enrichment, and declaratory judgment. But because the complaint fails to show any basis for awarding attorney's fees, the Court grants the motion to strike.

I.   BACKGROUND

This case is the result of a standard requirements contract gone wrong. BASF operates a business selling "aftermarket paints, refinishes, coating, primers, thinners and reducers as well as other related products and materials for the reconditioning, refinishing and repainting of automobiles, trucks, and other vehicles." Compl. ¶ 3. BASF sells these "refinish products" to partnered distributors, who in turn sell them to the body shops that deploy them in the field. *Id.* USA Coach is one such shop. *Id.* ¶ 4. To ensure that it has reliable buyers for its products, BASF enters into requirements agreements with individual body shops. These agreements obligate a shop to purchase a certain amount of BASF products from BASF distributors. *Id.* ¶ 8; *see generally* Requirements Agreement (Doc. 1-1).

On or about August 10, 2020, BASF entered into a requirements agreement with USA Coach. Compl. ¶ 8. The agreement—like all contracts—traded commitments between the parties. BASF promised to provide USA Coach with equipment and complementary toner that would let USA Coach make most effective use of BASF's refinish products, Requirements Agreement at 3–4, and to pay USA Coach $140,000 within 45 days of the requirements agreement's effective date, *id.* at 2. USA Coach promised to return the loaned equipment and any unused toner at the conclusion of the contract term, *id.* at 3–4, and to purchase its refinish-product requirements "from an

2

authorized BASF distributor . . . specifying only" BASF products, *id.* at 2. Instead of expiring after a term of years, the requirements agreement was to terminate once USA Coach had purchased $793,000 worth of qualifying refinish products, exclusive of specified "distributor discounts, rebates, returns, and credits." *Id.* at 2. Beyond the initial bargain, the parties also agreed on what should happen in case the requirements agreement were to "[t]erminate for any reason prior" to meeting the $793,000 threshold. *Id.* at 4. In the event of termination, and "in addition to whatever rights and obligations the parties may have to each other," USA Coach agreed to reimburse BASF a percentage—ranging from 0 to 110%—of the initial $140,000 payment. *Id.* The percentage would be based on how close USA Coach had come to reaching its purchase threshold before the agreement was terminated. *Id.*

In a perfect world, the requirements agreement would have worked out well for all involved. Not so here. Instead, USA Coach shut its doors sometime in May 2021, having purchased only $21,317.76 in refinish products of its $793,000 commitment. Compl. ¶¶ 12–14. BASF invoked the requirements agreement's remedial provision to claw back the $140,000 it had paid, plus an extra ten percent, in addition to lost profits flowing from USA Coach's breach. *Id.* ¶¶ 14, 16; Demand Letter (Doc. 1-2). When USA Coach did not oblige, BASF filed suit in this Court, seeking damages, a declaratory judgment, and

3

fees and costs. Compl. at 10. USA Coach promptly moved to dismiss the complaint and to strike the request for attorney's fees. Am. MTD at 14.

## II.   LEGAL STANDARD

### A. Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the Court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff.

*Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### B. Motions to Strike

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). But "it is well settled among courts in this circuit that motions to strike are generally disfavored and will usually be denied unless it is clear the pleading sought to be stricken is insufficient as a matter of law." *Blanc v. Safetouch, Inc.*, No. 3:07-cv-1200, 2008 WL 4059786, at *1 (M.D. Fla. Aug. 27, 2008) (Morris, Mag. J.) (collecting cases); *see also Belmer v. Ezpawn Fla., Inc.*, 8:20-cv-1470, 2020 WL 7419663, at *1 (M.D. Fla. Sept. 28, 2020) (Covington, J.) (noting that courts have "broad discretion" to rule on a motion to strike but emphasizing that such motions are "drastic" and are often considered "time wasters" (quotation omitted)).

A pleading is "insufficient as a matter of law" only if (1) it is patently frivolous on its face or (2) it is clearly invalid as a matter of law. *Belmer*, 2020 WL 7419663, at *1. This Court "will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the

issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (Kovachevich, J.).

## III. ANALYSIS

As an initial matter, the Court must determine the body of substantive law that governs BASF's claims.[1] In a diversity case like this one, the inquiry is controlled by the choice-of-law rules of the state where the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, Florida choice-of-law principles provide an easy answer—Michigan law governs. In a section titled "Governing Law," the requirements agreement provides that "[t]his agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law." Requirements Agreement at 5.

Florida courts consider choice-of-law provisions to be "presumptively valid" and will enforce them "unless applying the chosen forum's law would contravene a strong public policy of th[e] State." *Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012). As neither party has provided reason for the Court to believe that

---

[1] USA Coach initially contended that Florida law governed and declined to present argument on Michigan law. *See generally* MTD (Doc. 11). The amended motion to dismiss is somewhat unclear as to USA Coach's position on choice-of-law. *Compare* Am. MTD at 5 ("Plaintiff's request for liquidated damages and actual damages is contrary to Florida law."), *with id.* at 4 ("Plaintiff's claims must be analyzed under Michigan substantive law and federal procedural law.") & 9 (arguing that "Plaintiff's unjust enrichment claim must be dismissed" on account of "hornbook Michigan law"). Thus, in the interest of completeness and clarity, the Court conducts a choice-of-law analysis based on the complaint and the parties' briefing for purposes of deciding the motion to dismiss.

applying Michigan law would contravene Florida's public policy, the choice-of-law clause provides the governing rule for claims within its scope. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000) ("[I]t is incumbent upon the party seeking to avoid enforcement of the provision to show that the foreign law contravenes public policy of the forum jurisdiction."); *Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996) ("Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration.").

Count I (breach of contract) and Count III (declaratory judgment) fit naturally within the scope of the requirements agreement's choice-of-law provision because both claims are derived from and dependent on the agreement's validity and construction. And although it sounds in quasi-contract, Florida courts would say the same about Count II (unjust enrichment). *Trumpet Vine Invs., N.V.*, 92 F.3d at 1119–20 (analyzing an unjust enrichment claim arising out of a written agreement under the Florida choice-of-law principles governing contracts); *see also Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, No. 8:19-cv-2527, 2021 WL 3493313, at *17 (M.D. Fla. August 9, 2021) (Covington, J.) (applying a partnership agreement's choice of law clause to an unjust enrichment claim that was "based on" the substance of the agreement). Thus, the Court applies Michigan law to each of BASF's claims for relief.

### A. USA Coach's Motion to Dismiss

USA Coach moves to dismiss BASF's complaint, arguing that the complaint fails to state a claim as to each of three substantive counts: breach of contract, unjust enrichment, and declaratory judgment. BASF argues that it has met its burden at the pleading stage by alleging facts that plausibly entitle it to relief on each count. The Court agrees with BASF.

#### i. Count I (Breach of Contract)

To state a claim for breach of contract under Michigan law, a plaintiff must allege that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014) (footnote omitted). The complaint plausibly alleges each of the three elements.

First, the existence of a contract. The complaint, which includes the requirements agreement as an attachment, alleges that the parties entered into the agreement on or about August 10, 2020. Compl. ¶ 8; Requirements Agreement at 6. In exchange for $140,000 up front and the promise of additional equipment, USA Coach agreed to purchase, through itself and its controlled businesses, refinish products "from an authorized BASF distributor . . . specifying only BASF Glasurit and RM brand products." Requirements Agreement at 2. That obligation was to begin the first full month after the agreement's effective date and run until either USA Coach and its controlled businesses reached the contract's "minimum

purchase requirement" of $793,000 in BASF products, "net of all distributor discounts, rebates, returns and credits, subsequent to the Effective Date," or BASF terminated the agreement under specified circumstances. *Id.* Accepted as true for purposes of the motion to dismiss, these allegations allow the Court to draw the "reasonable inference" that the requirements agreement was a valid contract between its signatories. *Iqbal*, 556 U.S. at 678.

As to breach, the complaint alleges that USA Coach "breached and ultimately terminated the Requirements Agreement by, among other things, closing its business operations prior to fulfilling its $793,000 Minimum Purchases requirement." Compl. ¶ 12. That allegation is consistent with the text of the requirements agreement, which provides that—absent a specified termination event—USA Coach's purchase obligation will "continue until" it reaches the $793,000 purchase threshold. Requirements Agreement at 2. At minimum, the complaint plausibly alleges that USA Coach's failure to return any portion of the initial $140,000 inducement payment after it ceased business operations constituted a breach of the requirements agreement. Compl. ¶¶ 14–17, 22.

The same goes for injury. The complaint alleges that USA Coach's breach of its contractual obligations resulted in BASF losing $771,682.24 in revenue, *id.* ¶¶ 20–21, in addition to the $154,000 payment due under the requirements agreement's termination clause, *id.* ¶ 22. Altogether, BASF has alleged financial harm of almost one million dollars—more than sufficient to state a claim for breach of contract.

9

USA Coach's main objection to Count I comes down to damages. *See* Am. MTD at 5–9. Specifically, USA Coach argues that BASF's complaint amounts to an unlawful double dip—attempting to recoup both the actual damages caused by the alleged breach and liquidated damages under the requirements agreement's termination clause. *Id.* at 5. BASF responds that the termination clause is not a liquidated damages provision and that, even if it were, it is no obstacle to a claim of breach seeking actual damages. Resp. to Am. MTD (Doc. 15) at 6–11. In the alternative, USA Coach argues that BASF's claim for every dollar in outstanding purchase obligations constitutes a "prohibited speculative damage award." Am. MTD at 7–9. The Court agrees with BASF that neither of USA Coach's damages objections justify dismissal.

"A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in case of a breach." *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 421 (Mich. Ct. App. 1998). But although the termination clause does fix the amount of a particular "remedy," Requirements Agreement at 4, it is not a liquidated damages provision. That is so because the provision can trigger despite neither party having breached the overall requirements agreement. Consider the following hypothetical: Consistent with its obligations, USA Coach buys only BASF refinish products for two years, totaling $750,000 in qualifying purchases. It then sells a controlling interest to the owner of "Canada Body Shop," a competitor that already has its own

requirements agreement in place, without notifying BASF. Under the termination clause, BASF has the right to wind down its obligations and collect 35% of its initial $140,000 inducement payment. Requirements Agreement at 2, 4. But because the agreement does not purport to restrict USA Coach's ability to sell a controlling interest or require a particular form of notice, neither party has actually breached anything until either (1) termination is made effective and payment is refused or (2) some other breaching conduct occurs. USA Coach could also breach the requirements agreement without triggering the termination clause. It could, for example, purchase $1,000,000 in qualifying refinish products—well over its minimum threshold—only to refuse to return BASF's loaned equipment after making the same deal with Canada Body Shop. No termination-clause obligation, but still a potentially costly breach.

But even assuming that USA Coach is correct and the termination clause is a liquidated damages provision, Michigan law does not forbid a party from seeking both actual and liquidated damages under the same contract so long as the latter are not intended to be exclusive and a double recovery would not result. *Detroit Free Press v. Miller*, 193 N.W. 779, 780 (Mich. 1923) (allowing both actual and liquidated damages under a liquidated damages provision stating that "[a]ll rights and remedies of lessor herein shall be cumulative, and none shall be exclusive of any other rights and remedies allowed by law"). This principle is enshrined in Michigan's Uniform Commercial Code and has been

11

regularly applied by both state and federal courts. *See* MICH. COMP. LAWS § 440.2719(b) ("resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy"); *Best Team Ever, Inc. v. Prentice*, No. 319026, 2015 WL 3874477, at *5 (Mich. Ct. App. June 23, 2015) (applying *Detroit Free Press* to allow both liquidated and actual damages where there would be no double recovery); *BASF Corp. v. Brian's Auto Body, Inc.*, No. 4:18-cv-40183, 2019 WL 13234373, at *6 (D. Mass. Dec. 9, 2019) (similar, under a nearly identical requirements agreement to the one at issue here).

The language of the termination clause—which states that any remedy under that provision shall be "in addition to whatever rights and obligations the parties may have to each other," Requirements Agreement at 4—mirrors the language approved of in *Detroit Free Press*. 193 N.W. at 780. And there is no danger of a double recovery because BASF's actual and liquidated damages claims (assuming that there is a liquidated damages claim at all) address distinct and separable injuries. The termination clause allows BASF to recoup a percentage of its initial $140,000 inducement payment based on how close USA Coach came to reaching the minimum purchase requirement. The point of a suit to collect that refund is to make BASF whole from damages stemming from that inducement—damages that only indirectly relate to USA Coach's failure to purchase sufficient BASF refinish products. A claim for actual damages based on lost revenues, on the other hand, turns

entirely on the relationship between USA Coach's outstanding purchase obligations, BASF's outstanding revenues, and BASF's ultimate lost profits as compared to a world where USA Coach fully performed under the requirements agreement.

USA Coach's speculative damages argument fares no better. Whether or not BASF will eventually be able to prove that its actual damages are—dollar for dollar—equal to USA Coach's outstanding purchase obligations is a question for a later stage of this litigation. The Federal Rules of Civil Procedure do not require plaintiffs to plead ordinary contract damages "with particularity." *See* FED. R. CIV. P. 9. Instead, to survive a motion to dismiss, BASF need only have "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, as part of a "short and plain statement of the claim showing that [BASF] is entitled to relief," FED. R. CIV. P. 8(a)(2). The complaint's allegation that USA Coach's breach caused BASF to lose out on almost $800,000 in expected revenues pleads damages with sufficient specificity to survive a motion to dismiss.

### ii. Count II (Unjust Enrichment)

To state a claim for unjust enrichment, a plaintiff must allege "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *NL Ventures VI Farmington, LLC v. City of Livonia*, 886 N.W.2d 772, 784 (Mich. Ct. App. 2015)

13

(quotation omitted). BASF alleges that its $140,000 payment to USA Coach constituted a benefit and that allowing the latter to keep the former's money after reneging on its side of the deal would "be unequitable and unjust." Compl. ¶ 30. USA Coach argues that the claim should be dismissed because, under Michigan law, "[c]ourts may not imply a contract under an unjust-enrichment theory if there is an express agreement covering the same subject matter." *Zwiker v. Lake Superior State Univ.*, 986 N.W.2d 427, 445 (Mich. Ct. App. 2022); Am. MTD at 9–10 (collecting similar authorities).

If USA Coach conceded the existence and validity of a contract, that might eventually be a winning argument. *See, e.g.*, *Zwiker*, 986 N.W.2d at 445. The amended motion to dismiss, however, makes no such admission. In addition to challenging BASF's breach of contract claims as discussed above, the amended motion to dismiss states that BASF "brought suit . . . based on a contract it alleges the parties entered into on or about August 10, 2020." Am. MTD at 1. USA Coach only concedes that BASF "alleges the parties entered into this contract and Defendant, a recreational vehicle repair shop, was obligated to purchase its supply of 'Refinish Products' from Plaintiff." *Id.* (citing Compl. ¶¶ 8–9); *see also id.* at 6 (similar).

The Court does not read these statements to concede the existence or validity of a contract, and USA Coach cannot have its cake and eat it too. *See Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 182 (6th Cir. 1996) (reversing the dismissal of an unjust

enrichment claim under Michigan law because the Defendant had "kept its options open" and maintained the flexibility to "deny the existence of a contract"); *see also* FED. R. CIV. P. 8(a)(3), 8(d)(3) (allowing Plaintiffs to plead claims in the alternative "regardless of consistency"). Thus, at least until USA Coach makes its position clear, the Court declines to dismiss BASF's alternative claim for relief under a theory of unjust enrichment.

### iii. Count III (Declaratory Judgment)

Subject to exceptions inapplicable here, the Declaratory Judgment Act allows "any court of the United States, upon the filing of an appropriate pleading," to "declare the rights and other legal relations of any interested party seeking such declaration" in a "a case of actual controversy within [that court's] jurisdiction." 28 U.S.C. § 2201(a). BASF's breach of contract and unjust enrichment claims are within the Court's original jurisdiction because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *see* Compl. ¶¶ 1–2, 5, 22–25. Because the rights and obligations of the parties under the requirements agreement are at the core of the case, obtaining a judicial declaration of those rights is an appropriate remedy that can only benefit the parties in resolving their ultimate dispute.

USA Coach's arguments to the contrary are unavailing. First, a plaintiff need not allege that it has suffered irreparable harm to obtain relief under the Declaratory Judgment Act. *Steffel v. Thompson*, 415 U.S. 452, 471–72 (1974). Second, the fact that BASF

15

pleaded a breach of contract claim, alone, does not prevent it from also seeking a judicial declaration clarifying the parties' rights under the requirements agreement. *See, e.g., Eaton v. Principal Life Ins. Co.*, No. 8:20-cv-0061, 2022 WL 972452, at *4 (Mizelle, J.) (analyzing breach of contract claim together with "derivative" declaratory judgment claim).[2] And finally, BASF seeks to have the court interpret at least two provisions of the requirements agreement—paragraph one ("Term") and paragraph six ("Remedy")—to determine whether the agreement remains "in full force and effect." Compl. at 10. How the agreement might still be in effect despite BASF's statement that USA Coach engaged in the "unilateral termination of the [r]equirements [a]greement," *see* Demand Letter at 2, is a question for another day, but it is not a ground for dismissal under Rule 12(b)(6).

### B. USA Coach's Motion to Strike

In the alternative, USA Coach asks the Court to strike BASF's request for attorney's fees. Am. MTD at 13–14. Under Michigan law, "[a]s a general rule, attorney fees are not recoverable as an element of costs or damages absent an express legal exception." *Highfield Beach at Lake Mich. V. Sanderson*, 954 N.W.2d 231, 249 (Mich. Ct. App. 2020) (quotation omitted); *Dessart v. Burak*, 678 N.W.2d 615, 617 (Mich. 2004) ("The general

---

[2] That said, "[c]ourts have broad discretion to decide whether to entertain a request for a declaratory judgment" and "frequently decline to entertain" them when the request "is redundant with an earlier claim." *RLI Ins. Co. v. Coastline Tile of Pinellas, LLC*, 591 F. Supp. 3d 1182, 1190 (M.D. Fla. 2022) (Mizelle, J.). Because the Court declines to dismiss BASF's breach of contract and unjust enrichment claims, and because it is not clear that BASF's claim for declaratory relief is duplicative, the Court declines to dismiss Count III at this time.

16

'American rule' is that 'attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary.'" (quotation omitted)). The requirements agreement does not purport to allow either party to recover attorney's fees, and BASF has failed to identify any applicable statutory provision that would do so either. BASF argues that such support is not required at the pleading stage, Resp. to Am. MTD. at 17–18, but that suggestion is ill-founded.

In both authorities that BASF cites for the proposition, the question at issue was whether the facts as pleaded would have supported an attorney's fees award under the Equal Access to Justice Act. *Roll v. USAA Gen. Indem. Co.*, No. 3:19-cv-356, 2020 WL 1443995, at *1 (M.D. Fla. Mar. 25, 2020) (Howard, J.); *Picard v. USAA Gen. Indem. Co.*, No. 3:19-cv-307, 2020 WL 11423021, at *1 (M.D. Fla. Mar. 6, 2020) (Davis, J.). But the Equal Access to Justice Act expressly contemplates the possibility of a fee award. *See* 28 U.S.C. § 2412(d)(1)(A). In other words, BASF's cases do not stand for a broad exception to the general American rule. Instead, they merely apply that rule to a set of legal and factual circumstances absent from this case.

Although it might be prudent to decline to strike a request for attorney's fees when it is unclear whether the requirements of a potentially applicable statutory or contractual fee provision will be met, there is no reason to delay when the complaint lacks any plausible

basis on which to award fees. Because BASF's complaint lacks any such basis, the Court grants USA Coach's motion to strike.

## IV.   CONCLUSION

At this stage of the litigation, BASF Corp. has adequately pleaded its case apart from its claim to attorney's fees. Accordingly, USA Coach's Amended Motion to Dismiss (Doc. 13) is **DENIED**. BASF's request for attorney's fees is **STRICKEN**. No later than **August 2, 2023**, USA Coach shall answer the Complaint.

**ORDERED** in Tampa, Florida, on July 19, 2023.

*/s/ Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge